Peter BISHOP, Plaintiff-Appellant,
Cross-Appellee,

v.

The FIRESTONE TIRE & RUBBER
COMPANY, Defendant-Appellee,
Cross-Appellant.

Nos. 86–1012, 86–1042 and 86–1047.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1986.

Decided March 13, 1987.

Rehearing and Rehearing En Banc
Denied April 21, 1987.

Randy W. James, Risjord & Curtis, P.C., Kansas City, Mo., for plaintiff-appellant, cross-appellee.

Richard D. Wagner, Krieg, Devault, Alexanser & Capehart, Indianapolis, Ind., for defendant-appellee cross-appellant.

Before CUDAHY, COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

COFFEY, Circuit Judge.

Plaintiff-appellant Peter Bishop appeals the trial court's grant of a directed verdict in favor of the defendant-appellee, Firestone Tire and Rubber Company. Bishop claimed that Firestone was strictly liable in tort under Indiana law for injuries that Bishop sustained as a result of a truck tire explosion. Bishop also asserted that the jury instructions were improper as to his negligence claim. We affirm.

I

Peter Bishop began working for the Delphi Limestone Company, Inc. in the summer of 1977, and as part of his duties, Bishop disassembled, repaired, and remounted the rims in the truck tires. Bishop was trained in the procedure of servicing truck tires and was instructed that it was important to inspect and make sure that all the component parts of the tire rim were properly assembled and seated in the rim gutter prior to the inflation of the tire. If the component parts of the tire rim were

* The Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation.

not properly assembled and seated in the rim gutter, it is possible that the lock ring assembly *will* separate and eject from the rim gutter during the inflation procedure. To avoid this type of accident and the possibility of injury, the employees of the Delphi Limestone Company were instructed to use a safety cage[1] whenever they inflated a truck tire.

On August 9, 1978, the shop foreman directed Bishop to repair four tires. After Bishop had repaired and reset the rim in the first tire and while inflating the same, the lock ring assembly separated and violently ejected from the rim gutter severely injuring Bishop. Bishop testified at trial that prior to the explosion he inspected the rim base of the tire and the lock ring assembly and observed that the lock ring appeared to be properly assembled and seated in the rim.

On July 17, 1980, Bishop filed suit against Firestone on two separate theories of liability, alleging that Firestone was strictly liable in tort and also negligent in defectively designing the lock ring assembly. On September 2, 1983, 579 F.Supp. 397, the United States District Court for the Northern District of Indiana granted Firestone's motion for summary judgment ruling that the ten-year Indiana statute of repose for products liability actions barred Bishop's claim. Bishop appealed to this court, and we reversed and remanded for trial holding that the statute was not a bar to Bishop's claim. *Bishop v. The Firestone Tire & Rubber Company*, 742 F.2d 1460 (7th Cir.1984). The parties agreed to have the case transferred from the Northern District of Indiana to the United States District Court for the Southern District of Indiana. The defendant Firestone moved for a directed verdict on Bishop's product liability claim under the theory of strict liability at the close of the plaintiff's case, and the district court took the motion under advisement and granted the same (motion) after hearing the testimony of Firestone's initial defense witness. The court directed that the trial continue on Bishop's negligence claim, and at the conclusion of the trial the jury found that Firestone was not negligent in producing a defective lock ring that allegedly caused the rim assembly to separate and violently eject from the rim gutter, injuring Bishop.

## II

Initially Bishop maintains that the trial court erred in granting Firestone's motion for a directed verdict on Bishop's claim that Firestone was strictly liable in tort. "This court has held that state law standards govern the denial of a motion for a directed verdict in diversity cases." *Gonzalez v. Volvo of American Corporation*, 752 F.2d 295, 301 (7th Cir.1985). In *Gonzalez* we stated that "[b]ecause we apply the substantive law of Indiana to the facts of this case, Indiana's standard for directed verdict controls." *Id.* In *American Optical Company v. Weidenhamer*, 457 N.E.2d 181 (Ind.1983), the Indiana Supreme Court established the standard governing the grant or denial of a directed verdict and stated:

"Determining whether or not evidence is sufficient for the purpose proffered requires both a quantitative and a qualitative analysis with the avowed purpose of determining whether or not it can be said, with reason, that such purpose was thereby fulfilled. If opposite conclusions could, with reason, be drawn, then it cannot be said that the evidence was insufficient. The key word that is present in all of our variously worded explanations, by inference if not expressly, is "reasonable." Quantitatively, evidence may fail only if it is absent, that is only when there is none at all. Qualitatively, however, it fails when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of the witness or because the intended inference may not

---

1. A safety cage is a device that holds the truck tire in an upright position while the tire is being inflated. A safety cage consists of a frame of metal bars to restrain and contain the compo- nent parts of the tire rim assembly within the safety cage should the truck tire explode or the wheel assembly separate and eject.

be drawn therefrom without undue speculation."

*Id.* at 184. In *Dettman v. Sumner,* 474 N.E.2d 100 (Ind.App.1985), the court in applying the standard that the Indiana Supreme Court established in *American Optical* stated:

"We discern the *American* rule to be where an opposing party during trial filed a T.R. 50(A) motion [motion for directed verdict] for judgment at the conclusion of the evidence of any party having the burden of proof on an issue, the trial court is to determine whether or not it can be said, with reason, the evidence proffered by the burdened party is sufficient to support that party's contentions. Such determination is to be made by a two-step analysis of all the direct and circumstantial evidence then available. First, it must determine whether

(a) *quantitatively,* reasonable evidence supporting the burdened party's allegations is absent, that is, none at all exists. If so, the motion is to be granted. If such evidence is present, however, the court must then determine whether

(b) *qualitatively,* a reasonable inference the burdened party's allegations are true logically may be drawn from such evidence.

*Qualitative failure* in this sense, occurs if the trial court reasonably can say, either

(1) the witness(es) presenting such evidence is (are) not credible, or

(2) the inference the burdened party's allegations are true may not be drawn without undue speculation."

*Id.* at 104.

Accordingly, in reviewing Bishop's appeal in this diversity case, we analyse Bishop's claim that the district court improperly granted Firestone's motion for a directed verdict and apply the two-step Indiana analysis in reviewing a trial court's decision to grant or deny a motion for directed verdict. Initially we examine Indiana products liability law in order that we might determine the plaintiff's burden of proof.

In 1978, the Indiana legislative codified the doctrine of strict products liability in Indiana Code § 33–1–1.5–3. Section 33–1–1.5–3 states:

"Sec. 3. Codification and Restatement of Strict Liability in Tort. The common law of this state with respect to strict liability in tort is codified and restated as follows:

(a) One who sells any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm thereby caused to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and, if:

(1) the seller is engaged in the business of selling such a product, and

(2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(b) The rule stated in Subsection (a) applies although:

(1) the seller has exercised all possible care in the preparation and sale of this product, and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Ind.Code § 33–1–1.5–3 (West 1983). Thus, Bishop is required to establish that Firestone sold a "product in a defective condition unreasonably dangerous to any user." Ind.Code § 33–1–1.5–3 (West 1983). In *Bemis Company, Inc. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind.1981), the Indiana Supreme Court explained that in order for a plaintiff to prevail in a products liability case under a theory of strict liability, he must establish that the allegedly defective product was dangerous in a way that an ordinary user of the product would not expect. Thus, the defect "must be hidden and not normally observable, constituting a latent danger in the use of the product" before a manufacturer is liable under the

Indiana product liability statute. *Id. See also Bridgewater v. Economy Engineering Company*, 486 N.E.2d 484, 489 (Ind. 1985). In *J.I. Case Company v. Sandefur*, 245 Ind. 213, 197 N.E.2d 519, 523 (1964), cited and quoted with approval in *Bemis Company, Inc. v. Rubush*, 427 N.E.2d 1058, 1062 (Ind.1981), the Indiana Supreme Court stated that "[t]here must be reasonable freedom and protection for the manufacturer. He is not an insurer against accident and is not obligated to produce only accident-proof machines." *Id.* Under Indiana law, "[t]he emphasis is on the duty to avoid hidden defects or concealed dangers." *Id.*

■ Turning to Bishop's claim that the district court improperly granted Firestone's motion for a directed verdict on his product liability claim, initially we must determine whether "quantitatively, reasonable evidence supporting the burdened party's allegations is absent, that is, none at all exists." *Dettman*, 474 N.E.2d at 104. Bishop presented the expert testimony of a Dr. Gibson,[2] concerning a purported design defect in the tire rim lock ring assembly:

> "[Plaintiff's Counsel] Q. Do you have an opinion, Doctor Gibson, whether the characteristic of this ring to open at the gap, because of its design configuration and the steel of which it is constructed, makes the product defective or nondefective?
>
> [Dr. Gibson] A. Yes, I do have an opinion.
>
> Q. What is that opinion?
>
> A. That both the section and the strength of the material is too light for the application to which it has been applied.
>
>     \*    \*    \*    \*    \*    \*
>
> Q. Do you have an opinion, Doctor Gibson, whether the cause of that explosive disassembly was, in fact, the defect in the design of the ring?
>
> A. Yes, I do.
>
> Q. What is that?
>
> A. And, yes, it was."

Since Dr. Gibson's testimony constituted some evidence that the lock ring or lock ring assembly may have been defectively designed, we must next examine, whether "qualitatively, a reasonable inference the burdened party's [Bishop's] allegations are true logically may be drawn from such evidence." *Id.* The defendant Firestone presented expert testimony prior to the directed verdict on the strict liability claim to the effect that the lock ring assembly was not defective at the time it left the control of the manufacturer, Firestone, thus, contravening the testimony of Dr. Gibson. In *Dettman*, the court stated that:

> "[w]here ... such witnesses' testimony is, as here, controverted by the testimony of other witnesses, the trial court *may* not determine credibility, but must proceed to the second step in the qualitative failure analysis, namely, whether the inference the burdened party's allegations are true may be drawn without undue speculation."

*Id.* at 105 (emphasis in the original). Therefore, we must determine whether Bishop presented sufficient evidence for the jury, "without undue speculation," to draw an inference that the lock ring assembly was defective under Indiana law at the time it left the manufacturer (Firestone).

Bishop maintained at trial that Firestone's lock ring assembly contained a design defect and thus, Firestone was strictly liable in tort. The trial court after hearing all of the testimony, exhibits, and the arguments of the respective parties directed a verdict in favor of Firestone stating that "there is no evidence whatsoever that this ring was defective at the time that it was sold." The court continued to state that "[t]here is no evidence at all but that, if the ring were properly seated, and that [sic] it would hold to the tire, would not be dangerous." The plaintiff-appellant Bishop's expert witness, Dr. Gibson, in testimony on cross-examination agreed that as long as the lock ring assembly was properly assembled it was not dangerous.

---

**2.** Dr. Gibson's qualifications as an expert in the field of engineering were established at trial and his qualifications were unchallenged.

"Q. It's a fact, isn't it, Dr. Gibson, that if the R ring and the Clev-Weld rim base are properly assembled and the lock ring are completely seated in the gutter of the rim base, they cannot separate under the pressure that would normally be put in a 10 × 20 tire that's mounted on that assembly?

A. As long as the conditions are maintained, that is correct."

Dr. Gibson also testified that one can observe whether the lock ring is properly assembled.

"Q. I will put it to you again. I want to have a yes or no answer if you can, Doctor. The opening of the gap in use which you have testified about is just another way of saying that the lock ring is not seated completely in the gutter of the rim base; isn't that a correct statement?

A. Yes.

Q. Your answer is yes?

A. Yes. Yes.

Q. And it's a fact, isn't it, that if a person knows what to look for, the fact that ring is not completely seated can be seen?

A. If you know what to look for and you observe it, the answer could be yes."

At trial, the evidence was undisputed that Bishop was not only instructed, but was also warned that if the lock ring was not properly assembled and seated in the rim gutter, the ring assembly could separate and eject from the rim during the inflation process. In addition, Bishop testified that he has worked on hundreds of truck tires.

"Q. Do you [Peter Bishop] know approximately how many tires you would have changed at Delphi Limestone Company from the time you began your employment there in 1977 up until August 1978?

A. Hundreds.

Q. Hundreds?

A. Yes, sir.

Q. Can you be a little specific? Two hundred? Three hundred? Four hundred?

A. In the hundreds.

Q. That's the best you can do in your estimate?

A. Yes, sir.

Q. All right.

Now in 1977 when you began working for the Delphi Limestone Company they trained you in work with multi-piece truck rims, you were told, were you not, that there was [sic] certain hazards connected with that work?

A. I'm not sure whether you're talking about taking the tires apart, how to use the tools, or—

Q. Let me go one at a time.

You were told about the possibility of a ring coming off a rim during the inflation of the tire, were you not?

A. Yes, sir.

Q. You were told at that time that it was important that the component parts of the multi-piece truck rim be put together properly; is that correct?

A. Yes, sir.

Q. And Mr. Messick told you that if the wheel assembly was not put together properly the tire could explode, that it could be very dangerous, did he not?

A. Yes, sir, he did."

Bishop failed to present evidence during the trial that the lock ring assembly contained a defect that was "hidden and not normally observable." *Bemis Company, Inc. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind. 1981). Moreover, the plaintiff's own testimony together with the testimony of the plaintiff's expert witness revealed that Bishop was well aware of the precautions that must be taken to avoid a serious accident when using a Firestone lock ring assembly and should have observed whether the lock ring assembly was properly joined and seated. The Indiana Supreme Court has stated that to impress liability upon a manufacturer "the defect must be hidden and not normally observable, constituting a latent danger in the use of the product." *Bemis Company, Inc. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind.1981). From our examination of the record, we have been unable to find any testimony establishing that the Firestone lock ring assembly as referred to herein was dangerous if proper-

ly assembled and sealed in the rim gutter, and thus the record is void of any evidence that the lock ring assembly was defective under Indiana law. In the absence of any testimony establishing that the lock ring was defectively designed, any inference we might draw that the lock ring was defective merely because it separated and ejected from the rim while Bishop inflated the tire would of necessity be based on undue speculation and therefore insufficient under Indiana law to support Bishop's claim. We hold the trial court's action in directing a verdict in favor of Firestone was proper.

■ In the present case, the trial court also ruled that under Indiana law, the evidence presented was uncontroverted that the lock ring which caused Bishop's injuries had undergone a substantial change after it had left the manufacturer and prior to Bishop's accident, and thus Firestone was entitled to a directed verdict. The court based its decision on the following facts. Bishop's expert witness, Dr. Gibson, testified that the lock ring assembly in its original condition and properly assembled and seated in the rim would not cause the lock ring to separate from the rim during inflation and would not be dangerous. Furthermore, Bishop failed to substantiate that the lock ring was in substantially the same condition at the time of Bishop's accident as it was at the time it left the manufacturer. On the other hand, Firestone did present expert testimony to the effect that the lock ring in question had undergone a substantial change prior to Bishop's accident: the assembled lock ring that caused the lock ring and rim components to separate and eject from the rim under pressure thereby injuring Bishop evidenced a space gap of approximately one and one eighth inches when the ring was mounted on the tire base. Conversely a new lock ring allows no space gap between the ends of the split ring used to lock and secure the rim assembly mechanism in position. Firestone's witnesses testified that the lock ring that Bishop used at the time of the accident might very well have separated and ejected from the rim during inflation, while a properly seated and functioning

lock ring assembly would not allow the lock ring to separate from the rim.

Under Indiana law, a plaintiff can prevail under strict products liability theory only if he can demonstrate that the allegedly defective product reached him "without substantial alteration in the condition in which it is sold" and that his injuries were caused as a result of the defective product. Ind. Code § 33–1–1.5–3 (West 1983). The Indiana courts have held that "any change which increases the likelihood of a malfunction ... *is a substantial* change." *Cornette v. Searjeant Metal Products, Inc.,* 147 Ind.App. 46, 258 N.E.2d 652, 657 (1970) (emphasis in original). *See also E.Z. Gas, Inc. v. Hydrocarbon Transportation, Inc.,* 471 N.E.2d 316 (Ind.App.1984). The evidence presented at trial was uncontroverted that the lock ring had undergone a substantial change between the time it left the manufacturer's hands and the time of Bishop's accident and that the change produced a space gap that increased the likelihood of the lock ring separating and violently ejecting from the rim during the inflation process. Since under Indiana law any change that increases the likelihood that a product will malfunction constitutes "a substantial change," we hold it was proper for the district court to grant a directed verdict in favor of Firestone on Bishop's strict product liability claim.

■ Bishop also contends that "the trial court erred in failing to instruct the jury on the issue of failure to warn under strict products liability." In *Black v. Henry Pratt Co.,* 778 F.2d 1278 (7th Cir.1985), we explained that under Indiana law a manufacturer has a duty to warn of the dangerous condition of a product *"only* if [the product is] in fact defective and thus dangerous for the use for which [it] was supplied '[There is no duty to warn] with respect to a product which is, as a matter of fact, not dangerous.'" *Id.* at 1283 (quoting *American Optical Co. v. Weidenhamer,* 457 N.E.2d 181, 187 (Ind.1983)). The Restatement (Second) of Torts provides that strict liability applies only where the product as sold is "dangerous to an extent beyond that which would be contemplated

by the ordinary [person] who purchases it." Restatement (Second) of Torts § 402A comment i. In *Bemis Company, Inc. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind.1981), the Indiana Supreme Court stated that "[a]lthough the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all [i.e., the ordinary user]." The Indiana Supreme Court has also stated " '[t]here is no duty to warn just because a product might conceivably cause injury.' " *American Optical Co. v. Weidenhamer,* 457 N.E.2d 181, 187 (Ind.1983) *quoting* 63 Am.Jur.2d 53, *Products Liability* § 42. In *Ragsdale v. K–Mart Corporation,* 468 N.E.2d 524, 527 (Ind.App.1984), the court stated that "[w]hether a defect or danger is open and obvious is an objective test, based upon what the user *should* have known [or observed]."

The evidence presented at trial clearly established that the lock ring assembly, if properly assembled and seated in the rim, was not dangerous. Bishop's own expert, Dr. Gibson, conceded on cross-examination that a properly assembled and seated lock ring without a space gap would not separate and eject under normal inflation pressure. Dr. Gibson also conceded that a person experienced in servicing truck tires as Bishop should have been able to observe whether or not the Firestone lock ring assembly was properly assembled and seated in the gutter of the rim. Bishop testified that he had changed and repaired hundreds of truck tires and that he had been trained in working with multi-piece truck tire rims. In addition, Bishop stated at trial that he had been warned on a number of occasions prior to the accident of the possibility that the lock ring assembly could separate from the rim if it was not properly assembled and seated in the rim gutter.

The evidence at trial demonstrated that if Bishop had been as attentive as the nature of the job required knowing its inherent dangers, he would have been able to observe whether or not the lock ring assembly was properly assembled and seated in the rim gutter. Under Indiana law, a manufacturer has no duty to warn simply because a product *might* cause injury and also has no duty to warn if the danger is open and obvious. *Bemis Company, Inc. v. Rubush,* 427 N.E. 1058, 1061 (Ind.1981); *Ragsdale v. K–Mart Corporation,* 468 N.E.2d 524 (Ind.App.1984). Since Bishop well knew of the obvious and known dangers involved in using the lock ring tire assembly in question as well as his admission that he had been instructed as to the proper method in assembling the tire lock ring, the trial court's refusal to instruct the jury on the manufacturer's duty to warn under strict products liability was proper. Furthermore, the court's decision not to instruct the jury on a manufacturer's liability for failure to warn under strict liability theory was proper since we have held earlier that the trial court's direction of a verdict against Bishop was proper on his strict liability claim as Bishop failed to establish that the lock ring was defectively designed or to rebut evidence that the ring involved in his accident was not in substantially the same condition as when it left the control of the manufacturer. Thus the products liability claim under a theory of strict liability was never presented to the jury.

### III

Bishop next maintains that "the trial court erred when it instructed the jury that Bishop's contributory negligence was a defense to his cause of action." At trial Bishop asserted that Firestone had negligently caused his injuries. Under Indiana law contributory negligence is a complete defense to a claim based on a theory of negligence. Bishop proceeded against Firestone under two theories, strict liability and negligence. Bishop argues that the district court's instruction to the jury was improper because contributory negligence is not a defense to a cause of action based on strict liability. This argument is without merit since the strict liability claim was never submitted to the jury as the trial court had properly directed a verdict on motion against Bishop on his strict liability claim after the close of the plaintiff's case and after only one defense witness had

testified. It was proper for the district court to instruct the jury on the defense of contributory negligence since the trial court submitted the case to the jury only upon Bishop's claim sounding in negligence and contributory negligence is a defense under Indiana law to a negligence claim.

Bishop also maintains that the trial court improperly instructed the jury on contributory negligence because he contends there was no evidence in the record that he (Bishop) was contributorily negligent. However, Bishop's own expert and Firestone's experts testified that Firestone's lock ring assembly would not have separated and ejected from the rim had it not undergone any substantial change after it left the hands of the manufacturer (space gap in ring assembly) and had it been properly assembled. In addition, Firestone presented testimony that the lock ring assembly in question was worn, used and, obvious to the human eye, unfit for use on a truck rim since it could not be properly fitted into the rim gutter without a very noticeable space gap of one and one-eighth inch. Thus, absent Bishop's carelessness in using a damaged lock ring, or his lack of care in observing the gap, the lock ring may not have separated from the rim during the inflation procedure. Hence, Bishop's negligence could very well have been the cause of his injury. Bishop's argument that the trial court improperly instructed the jury on the defense of contributory negligence fails since there was evidence in the record that Bishop was contributorily negligent and such evidence presented a question of fact for the jury. Therefore, the trial court properly instructed the jury on the issue of his (Bishop's) contributory negligence.

### IV

Bishop next asserts that the trial court should not have instructed the jury on the issue of intervening and concurrent causes for Bishop's injuries, since Bishop maintains that there was no evidence that acts of any third parties or outside forces caused his injuries. However, the defendant Firestone introduced extensive evidence at trial that Bishop's employer (Delphi) provided its employees with inadequate and improper safety devices. Also, the evidence demonstrates that the safety cage Bishop used during the inflation process was constructed and maintained and operated with rusted and perforated bars. A safety cage holds the truck tire and is supposed to restrain and hold and contain the component parts of the rim assembly within the cage in case of an explosion or ejection thereby preventing injury should the lock ring assembly separate and eject from the rim during the inflation process. If Bishop had used a properly maintained safety cage, the lock ring assembly would in all probability have been restrained within the cage thus preventing injury to Bishop. Since there was competent evidence in the record that a properly constructed and maintained cage would have prevented Bishop's injuries, and that they were readily available in the marketplace, it was proper for the court to instruct the jury concerning intervening and concurrent causes. Because the evidence suggested that Bishop's employer provided a woefully inadequate and improperly constructed and maintained safety cage, the jury might well have found that Bishop's employer and not Firestone was the cause of Bishop's injuries.

### V

Bishop additionally maintains that the district court erred in instructing the jury on the Indiana statute concerning work place safety because he asserts that Firestone failed to present any evidence at trial to support its defense that Bishop's employer, Delphi Limestone, maintained an unsafe workplace and that therefore Bishop's employer and not Firestone was responsible for Bishop's injuries. The trial court gave the following instruction to the jury:

> "At the time of the accident in question, an Indiana statute provided as follows:
>
> Each employer shall establish and maintain conditions of work which are reasonably safe and healthful for em-

ployees, and free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

If you find that plaintiff's employer, Delphi Limestone Company, was not in compliance with such statute at the time of plaintiff's accident either in that it failed to give plaintiff full and complete instructions as to how to ascertain whether the lock ring of the split rim was properly seated, or in failing to furnish plaintiff with a remote or clip-on air chuck, or in failing to construct a safety cage sufficient to contain the explosive separation of a truck tire, and was thereby negligent, then you may consider whether such negligence on the part of Delphi, if any, was the intervening and only proximate cause of the accident.

In this connection, you should consider whether Delphi's negligence, if any, was reasonably foreseeable by the defendant. If you find that it was, then it could not be considered to be an intervening cause; if you find that it was not foreseeable, and was in fact the independent and sole proximate cause of the accident, then your verdict should be for the defendant."

Several employees of Delphi Limestone testified that they knew of safety devices, such as "remote air chucks," [3] that could and should be used in repairing truck tires and that Delphi Limestone failed to provide those devices. In addition, one of Firestone's experts testified that the existence and use of such safety equipment is widely accepted, that such safety devices were readily available commercially and that it was incumbent upon an employer in Indiana to provide such devices for its employees. Thus, the evidence at trial revealed that Delphi Limestone maintained unsafe working conditions in that it failed to provide its workers with adequate safety devices. Bishop's argument that the court's instruction on the Indiana work place safety statute was improper is without merit as the safety of the working conditions at Delphi was an issue for the trier of fact to resolve since the evidence presented at trial demonstrated that the failure of Bishop's employer to maintain safe working conditions may have caused Bishop's injuries.

## VI

■ Bishop further maintains that the district court's instruction to the jury on the doctrine of incurred risk was improper since there was no evidence introduced at trial to establish that he voluntarily assumed the risk that the lock ring on the tire he inflated would separate from the rim causing him injury. The Indiana courts have explained the doctrine of incurred risk as follows:

"The doctrine of incurred risk is based upon the proposition that one incurs all the ordinary and usual risks of an act upon which he voluntarily enters, so long as those risks are known and understood by him, or could be readily discernible by a reasonable and prudent man under like or similar circumstances."

*Stallings v. Dick,* 139 Ind.App. 118, 210 N.E.2d 82, 88 (1965). *See also Kroger Company v. Haun,* 177 Ind.App. 403, 379 N.E.2d 1004, 1008 (1978). Under Indiana law, incurred risk is an affirmative defense to claims based on either strict liability or negligence. *See Moore v. Federal Pacific Electric Company,* 402 N.E.2d 1291, 1293 (Ind.App.1980). Bishop argues that the record is barren of any evidence establishing that in servicing the truck tire he voluntarily assumed the risk that his injuries might result. However, one of Bishop's co-workers, Jerry Foreman, testified and stated on cross-examination that immediately prior to his accident Bishop said "that he hoped the tire would not explode." Moreover, Bishop testified that he had been warned that the lock ring could separate and eject from the rim gutter during inflation if it was not properly joined and seated in the rim. In addition, Firestone's expert

---

**3.** A "remote air chuck" allowed the operator to remain at a safe distance during the tire inflation process.

witnesses testified that if the lock ring was properly assembled and seated in the gutter it would not separate from the rim. Firestone argues that "Bishop knew or suspected that the multi-piece rim involved in his accident was not properly assembled, and yet voluntarily proceeded to inflate the tire until the [accident and injury] occurred." The evidence introduced at trial supported the contention that Bishop voluntarily proceeded to inflate the truck tire involved in his accident while at the same time expressing his concern as to the danger that the lock ring would separate and eject from the rim and with knowledge of the space gap in the ring assembly. Thus, since under Indiana law Bishop may have incurred the risk that injuries might result if the lock ring was not properly assembled and seated in the rim, the trial court's instruction was proper.

## VII

■ Bishop finally contends that the district court erred in failing to instruct the jury on the issue of punitive damages. The jury failed to award compensatory damages to Bishop, and he would not be entitled to punitive damages under Indiana law since "an award of compensatory damages is a prerequisite to an award of punitive damages." *Dotlitch v. Dotlitch*, 475 N.E.2d 331, 346 (Ind.App.1985). Thus, any error on the part of the trial court in failing to instruct the jury on the issues of punitive damages would be harmless error. Moreover, "[t]o support a claim for punitive damages, there must be clear and convincing evidence that the tortious conduct was committed oppressively, fraudulently, or with malice or gross negligence." *Ragsdale v. K-Mart Corporation*, 468 N.E.2d 524, 527 (Ind.App.1984). The record is void of any clear and convincing evidence that Firestone acted "oppressively, fraudulently, or with malice or gross negligence." *Id.* at 527. On the contrary, evidence submitted at trial demonstrates that Firestone took steps to inform the public of the hazards associated with the use of its lock ring assembly. Robert Lee, a senior engineer for Firestone, testified at trial:

"[Plaintiff's Counsel] Q. Mr. Lee, you recognize the need for safety reasons to warn potential users of your truck rims?

[Lee] A. We have always tried to warn potential users of our truck rims."

Plaintiff's counsel introduced a letter written by Lee in May of 1968 outlining the steps Firestone was taking to warn potential users which stated in part:

"We are trying for safety reasons to warn potential users ... of truck rims to take adequate precautions when inflating multi-piece truck rims. Realizing that few of the ultimate operators ever see a rim catalog or the pertinent rim safety literature issued by the Rim and Wheel Association, we are trying to have our salespeople get the following note inserted in the various vehicle manufacturers' operating manuals. The note is, 'Tires used on multi-piece rims should be assembled and inflated only by experienced, qualified personnel. Always inflate tires in a safety cage whenever possible or use a clip-on air chuck and stand aside. I think it would be helpful if the entire industry made an attempt to pursue this type of program. If you have some additions or changes that you feel should be made to this note, we would appreciate your comments.'"

Thus, the trial court decision not to instruct the jury on the issue of punitive damages was proper since the evidence established that Firestone's conduct in manufacturing the lock ring was not "oppressive, fraudulent, malicious, or grossly negligent" as is required under Indiana law for an award of punitive damages.

## VIII

In its brief Firestone requests that this court affirm the judgment of the district court, but also states that "in the event that this court should determine that such judgment should be reversed for any reason, Firestone requests the court to consider its cross appeal." In its cross-appeal, Firestone maintains that the trial court erred in instructing the jury on the Indiana statute of repose. In *Black v. Henry*

*Pratt Co.*, 778 F.2d 1278, 1284 (7th Cir. 1985), we noted that:

"Indiana has thus adopted an enlightened approach to the law of products liability in limiting a manufacturer's prospective liability. In contrast to Indiana's enlightened approach, other states have refused to enact a similar statute of limitations and thus subject manufacturers to open-ended product liability. Such open-ended liability places an unreasonable financial and insurance and non-competitive burden upon manufacturers who may be held liable for injuries caused by products manufactured and sold 40 to 50 years ago despite the constant improvement in design and increasingly hazard-proof nature of each succeeding product model within that 40 to 50 year period."

However, since we affirm the district court's decision to direct a verdict in favor of Firestone on the issue of strict products liability and hold that the court properly instructed the jury, we need not reach the question of whether the trial court properly instructed the jury on the Indiana statute of repose.

## IX

We hold that the trial court properly directed a verdict in favor of Firestone on Bishop's products liability claim under the theory of strict liability because under Indiana law the inference that Firestone's lock ring was defective could not logically be drawn based on the evidence presented absent undue speculation. Further, Bishop failed to demonstrate that Firestone's lock ring assembly was in substantially the same condition as when Firestone manufactured and sold it some 40 years ago. Finally, we hold that the trial court properly instructed the jury on Bishop's negligence claim since the record contained sufficient evidence to support each of the court's instructions. The decision of the trial court is affirmed.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

Neither the district court nor the majority deals in a persuasive way with what seems to be the plaintiff's main contention. The majority asserts that the evidence showed that a properly assembled multi-piece tire rim was not dangerous, and that it was obvious to an observer whether or not such a rim was properly assembled. Both the majority and the district court conclude that the gradually expanding "gap" in the lock ring constituted a "substantial change" in the ring and thus precluded recovery under the product liability statute. And the majority also determines that no duty to warn of the danger of an explosion arose because any such danger was open and obvious.

The plaintiff, however, argued that the gradually expanding "gap" in the lock ring occurred through normal use and resulted from a design defect. The expanding gap, according to evidence presented by plaintiff's expert, could cause the lock ring to appear properly assembled when it actually was dangerously loose and could explode. Thus there appears to be a jury question on whether a design defect caused the lock ring to become unreasonably dangerous during normal use. In addition, the gradually expanding gap, if it resulted from the design of the lock ring, would not constitute a "substantial change" in condition defeating a design defect claim—if any defect existed it certainly existed at the time of manufacture. Finally, the essence of plaintiff's failure to warn claim is that the gradually expanding gap was foreseeable to the manufacturer and resulted in a latent, gradually increasing danger. The question whether such a danger is "open and obvious" is normally fact specific and is a question as to which the evidence here was in conflict. *See Corbin v. Coleco Indus.*, 748 F.2d 411, 417–18 (7th Cir.1984) (Indiana law); *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 285 (Ind.1983).

Nothing in the rulings of the district court or in the majority opinion persuades me that plaintiff's design defect theory should not have gone to the jury. Undoubtedly, the plaintiff here faced a daunting statute of limitations defense that may have prevailed, but the design defect theory itself seems to be the basis of a valid

claim. If, as the evidence appears to admit, the development of the gap was a gradual process tracing from a manufacturing defect, the jury could have awarded damages based on strict liability for a design defect. Even if the expanding gap was a foreseeable result of normal use, the jury might have found strict liability based on a failure to warn. I therefore respectfully dissent with respect to the direction of the verdict on this branch of the case.