**FORD MOTOR COMPANY,**
**Appellant–Defendant,**

**v.**

**Murlin REED and Sheryl Reed, Individually, and American States Insurance Company, as Subrogee of Marlin and Sheryl Reed, and Kentucky Central Insurance Company, Appellees–Plaintiffs,**

**Jerry Alderman Ford, Inc., Nominal Appellee–Defendant.**

No. 49A02–9607–CV–466.

Court of Appeals of Indiana.

Dec. 23, 1997.

Thomas G. Stayton, Nancy G. Tinsley, Baker & Daniels, Indianapolis, for Appellant–Defendant.

Paul J. Page, David T. Page, Baker Siegel Page & Pittman, Indianapolis, Richard K. Shoultz, Lewis & Wagner, Indianapolis, John Thomas Drics, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Ford Motor Company (Ford), appeals the trial court's denial of Ford's Motion for Judgment on the Evidence in litigation filed by Appellees, Murlin and Sheryl Reed [1] (the Reeds), American States Insurance Company (American) and Kentucky Central Insurance Company (Kentucky Central). The lawsuits claimed that a manufacturing defect in a 1990 Ford Mustang caused the vehicle to ignite while in the Reeds' garage, causing property damage to the vehicle and to the residence as well as smoke inhalation personal injury to Murlin Reed.

We affirm.

Ford presents two issues for review which we restate as follows:

(1) Whether there was a lack of evidence of a defective condition in the 1990 Ford Mustang, thus rendering the trial court's denial of Ford's motion in error.

(2) Whether there was a lack of evidence establishing that the defective condition, if any, proximately caused Murlin Reed's injuries, thus rendering erroneous the trial court's denial of Ford's motion as to the Reeds.

The facts of the case are essentially undisputed. On July 18, 1990, the Reeds purchased a 1990 Ford Mustang. On December 12, 1990, Sheryl Reed returned home at around 8:00 p.m. and parked the car in the attached garage. She went to bed that evening at a 10:00 p.m. and awoke at around 3:00 a.m. to a strong burning smell. She noticed smoke coming from the garage and woke Murlin Reed.

---

1. Although, as both parties note, the Reeds divorced between the time of the incident and the conclusion of the proceeding and Sheryl Reed began using the name Sheryl Fultz, we will simply refer to her as Sheryl Reed throughout the opinion.

Murlin told Sheryl to call the fire department and opened the door to the garage. There were flames coming from inside of the Mustang. Murlin then entered the garage and opened the passenger door of the Mustang but was knocked back by the flames. He put the fire out with a garden hose. After putting out the fire, Murlin had great difficulty breathing, his head hurt and his lungs hurt. He was coughing because he had inhaled a lot of smoke.

After the fire, Murlin Reed suffered health problems. He had continuous headaches, and his sinuses were blocked. He constantly felt pressure in his head. He claims he never had any of these problems before the fire and that his symptoms persisted until May of 1991, when he underwent surgery.

The Reeds and American, who insured the Reeds' home, filed a complaint against Ford and Jerry Alderman Ford in August of 1992. Kentucky Central, which insured the Mustang, filed a similar complaint in December. The case was tried before a jury in March of 1996. Ford moved for judgment on the evidence at the end of the plaintiffs' case, but the court denied the motion. After the jury returned a verdict in favor of the plaintiffs, Ford again moved for judgment on the evidence claiming that there was not sufficient evidence that a defect existed in the Ford or that Murlin's injuries were proximately caused by the fire. The motions were again denied, and the court entered judgment in favor of the plaintiffs.[2]

Ford contends that it was entitled to judgment on the evidence. When considering such a motion, the trial court must consider only the evidence and reasonable inferences most favorable to the nonmoving party. *Remington Freight Lines, Inc. v. Larkey* (1994) Ind.App., 644 N.E.2d 931, *reh'g denied* (citations omitted). Judgment on the evidence should be granted only if there is no reasonable evidence or inference which would cause reasonable people to find in favor of any party but the moving party. *Id.; see also Sipes v. Osmose Wood Preserving Co.* (1989) Ind., 546 N.E.2d 1223, 1224. Upon appeal, this court reviews the trial

court's ruling using the same standard as the trial court. *Smith v. Beaty* (1994) Ind.App., 639 N.E.2d 1029, 1032.

The Reeds' complaint was brought pursuant to I.C. 33–1–1.5–3, which, at the time of the incident, noted in relevant part that:

"(a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition...." (Burns Code Ed. Repl.1992).

In the jury instructions, the trial court advised that the Reeds could prove the existence of a defective condition in one the of the four following ways:

"1. Plaintiffs may produce an expert to offer direct evidence of a specific manufacturing defect;

2. plaintiffs may use an expert to circumstantially prove that a specific defect caused the product failure;

3. plaintiffs may introduce direct evidence from an eyewitness of the malfunction, supported by expert testimony explaining the possible causes of the defective condition; and

4. plaintiffs may introduce inferential evidence by negating other possible causes." Record at 461.

The gravamen of Ford's complaint is that, although there was testimony that the fire in question started in the Mustang's center console, no witness could pinpoint the identity of the specific defect.

It is axiomatic that in order to show that a product is defective, the plaintiff must be able to point to a defect. The aforementioned jury instructions that the court posited as a test for proving the existence of a defect were taken, almost verbatim, from *Whitted v. General Motors Corp.* (1995) 7th

---

**2.** At the close of plaintiff's evidence, the trial court granted Jerry Alderman Ford's motion for

judgment on the evidence; therefore, it is not an active party to this appeal.

Cir., 58 F.3d 1200, 1207. While the test is helpful in ascertaining the existence of a defect under Indiana law, if the parties had read further into the *Whitted* decision, they would note that the court indicated some question as to whether the test reflected applicable Indiana law.

Directly preceding the above test, as stated in *Whitted,* the Seventh Circuit Court of Appeals noted that: "Of the jurisdictions that allow theories analogous to *res ipsa loquitur* to prove that a manufacturing defect existed, four methods of proof have evolved." *Id.* Those four methods comprise the above test. The court did not hold whether the doctrine of *res ipsa loquitur* is applicable to Indiana products liability cases. The court did, however, turn the reader's attention to *Welge v. Planters Lifesavers Co.* (1994) 7th Cir., 17 F.3d 209, in which Judge Posner tendered to the reader the theoretical inconsistencies of using *res ipsa* in product liability cases.

> " 'The doctrine of res ipsa loquitur teaches that an accident that is unlikely to occur unless the defendant was negligent is itself circumstantial evidence that the defendant was negligent. *The doctrine is not strictly applicable to a products liability case because unlike an ordinary accident case the defendant in a products case has parted with possession and control of the harmful object before the accident occurs.* But the doctrine merely instantiates the broader principle, which is as applicable to a products case as to any tort case, that an accident can itself be evidence of liability. If it is the kind of accident that would not have occurred but for a defect in the product, and if it is reasonably plain that the defect was not introduced after the product was sold, the accident is evidence that the product was defective when sold.' "

*Whitted, supra,* 58 F.3d at 1208 (alteration in original) (quoting *Welge, supra* at 211). As the *Whitted* court noted, *res ipsa* requires that the defendant have control over the instrumentality of harm, while products liability requires that the product leave the defendant's control. The court did conclude, however, that "in certain rare instances, circumstantial evidence may produce reason-

able inferences upon which a jury may reasonably find that a defendant manufactured a product containing a defect." *Whitted, supra* at 1208.

This court has previously noted that *res ipsa loquitur* is inappropriate in a situation analogous to products liability. In *SCM Corp. v. Letterer* (1983) Ind.App., 448 N.E.2d 686, the plaintiffs purchased a toaster and owned it for almost three months before it malfunctioned and caused a fire. The plaintiffs argued that *res ipsa* should apply because the instrumentality was in the control of the manufacturer at the time that the negligence occurred. The court disagreed. "Indiana strongly embraces the *res ipsa doctrine* only if the injuring instrumentality is within the exclusive control of the defendant at the time of injury." *Id.* at 689. *But see* Givan, J., dissenting in *Miller v. Todd* (1990) Ind., 551 N.E.2d 1139, 1145 ("What our legislature and many of the cases in products liability are actually discussing [when dealing with strict liability] is the doctrine of *res ipsa loquitur.*") and in *Koske v. Townsend Engineering Co.* (1990) Ind., 551 N.E.2d 437. Although we agree that products liability and the doctrine of *res ipsa loquitur* are antithetical, the four methods of proof enunciated in *Whitted* are helpful tools in our basic inquiry, which is whether there was sufficient evidence to show that there was a defect.

Ford contends that the *Whitted* case itself shows that the evidence was not sufficient. In that case, the plaintiff was driving his 1987 Chevrolet Nova when he slid off the road traveling at least twenty five miles per hour. Whitted (the plaintiff) remained in the car during the impact, but, at some point, the webbing of his seat belt separated. *Whitted, supra,* 58 F.3d at 1202. After the discussion about *res ipsa loquitur* above, the court concluded that Whitted was not able to "avail himself of the general application of circumstantial evidence." *Id.* at 1208. The court noted that six years had passed between the time that the defendant had manufactured the seat belt and the accident. Moreover, the plaintiff failed to counter alternative explanations of the seat belt's deterioration. He also failed to show that the seat belt did

not break at a point which may have, in fact, decreased his injuries. *Id.* at 1208–09.

■ Ford correctly asserts that a defect is not necessarily shown simply because a product failed in a particular accident. *Bammerlin v. Navistar Int'l Transp. Corp.* (1994) 7th Cir., 30 F.3d 898. Ford directs our attention to *Bishop v. Firestone Tire & Rubber Co.* (1987) 7th Cir., 814 F.2d 437. In *Bishop,* the plaintiff was injured while repairing tires. A lock ring assembly separated and ejected from the rim gutter. Bishop had been previously instructed that all the component parts of the tire rim must be properly assembled and seated in the rim gutter or the lock ring may explode. *Id.* at 438–39, 442. The court concluded that there was no evidence that the lock ring was defective. Bishop's expert simply testified that the lock ring may separate *if incorrectly assembled.* The court noted that this was not a latent danger. There was no evidence that the lock ring actually contained a defect. "In the absence of any testimony establishing that the lock ring was defectively designed, any inference we might draw that the lock ring was defective merely because it separated and ejected from the rim while Bishop inflated the tire would be based on undue speculation." *Id.* at 443.

■ Our case is to be distinguished from the factual analysis in *Bishop.* As Ford points out, the Reeds' expert, Gerry Mang, cannot identify the specific defect in the Mustang.

"Q: [Y]ou cannot pinpoint the exact cause of the fire, is that correct?

A: I cannot pinpoint the cause of the cause of the fire. I can pinpoint the origin and the—where the cause that caused the origin of the fire [occurred].

. . . .

A: All I can tell [Ford] is what the symptom of the problem is." Record at 1249–50.

However, Mang did opine as to the specific cause of the fire.

"A: I believe that [it's] electrical failure in the electrical components within the console that are associated with the keypad for the mirrors." Record at 1140.

Further, Mang identified a wire taken from the console of the Mustang. He noted that the wire evidences some pitting which indicates electrical fault. This pitting is caused by high resistance or energy flow. When questioned further, he indicated that such a high energy flow would cause deterioration of the circuit and potentially a fire.

■ Unlike the cases Ford cites, the Reeds all but eliminate every possibility but a defect in the console. They only owned the car for a five-month period and the testimony revealed that the fire occurred in an area of the car to which they did not have access— the console. Absent some indication of an extraneous cause, the fact that there was a fire is also circumstantial evidence that there was a defect. This, combined with the fact that Mang indicated that the cause of the fire was an electrical defect within the center console, is enough for the jury to conclude that some defect in the console caused the fire. It is not fatal to the Reeds' claim that the expert could not, with precision, point to which wire had shorted or otherwise generated such heat or to cause the flames and why it had done so. The trial court correctly denied Ford's Motion for Judgment on the Evidence in this respect.

■ Ford next contends that the trial court incorrectly denied its motion which asserted that there was not sufficient evidence to support the conclusion that the fire caused Murlin Reed's health problems. Ford asserts that the Reeds were required to present an expert witness on the issue of whether the fire in the Mustang caused Murlin Reed's problems.

In *Daub v. Daub* (1994) Ind.App., 629 N.E.2d 873, 878, *trans. denied,* we stated:

"Ordinarily, . . . the question of the causal connection between a permanent condition, an injury and a pre-existing affliction or condition is a complicated medical question. . . . When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." (citations omitted).

While we agree with Ford that an expert is usually necessary in complicated medical cases involving causation, we do not feel that

it is so here. In *Daub,* the plaintiff slipped while on the defendant's patio. She did not fall all the way, but caught herself and felt no immediate pain. The next day her lower back began to stiffen. She also did not seek medical care immediately after the incident. Furthermore, the plaintiff fell a second time at a Cub Foods store and had been suffering minor back problems since an occurrence when she was sixteen—before the incident in question. *Id.* at 877. The court concluded that, considering the fact that she had multiple injuries to her back suffered at different times and did not experience pain immediately after the accident, an expert was needed to discern between the causes of her various back problems.

The Reeds cite *Smith v. Beaty, supra,* 639 N.E.2d at 1029. In *Smith,* the plaintiff was injured when the van he was driving rolled over. After the van had rolled over, it was struck by another vehicle driven by the defendant. The plaintiff presented expert medical testimony, but the doctor could only speculate as to whether the plaintiff's injuries were caused by the van rolling over or by the van being struck by the defendant's vehicle. The *Smith* court noted that expert testimony is not necessary when the issue of causation is within the understanding of a lay person. Smith testified that he did not feel any rib pain until after he was struck by the defendant's vehicle.

Murlin Reed testified that immediately after fighting the fire in his garage, his lungs hurt and his head hurt. Since the fire, he has experienced continuous headaches, his sinuses have felt blocked and he has felt constant pressure. Although the medical reports entered into evidence indicated that there was a "history of possible chronic or recurrent sinusitis" (Record at 1385), Murlin Reed testified that he only had allergies prior to the fire and the symptoms of his allergies were in no "way, shape or form" similar to the symptoms he experienced after the fire. Record at 1345.

A medical expert is not always necessary to prove causation. It was well within Murlin Reed's realm of comprehension and observation that the black smoke in his garage that night caused his problems. These were,

unlike in *Daub,* symptoms which began immediately after the fire and continued until he had surgery. The symptoms were not of the same type as any previously experienced. The fact that he had minor allergy problems before the fire does not make this a "complicated medical question" as contemplated in *Daub, supra,* 629 N.E.2d at 878. The trial court did not thereby err in determining that there was sufficient evidence to submit to the jury whether the fire caused Murlin Reed's injuries.

The decision of the trial court is hereby affirmed.

FRIEDLANDER and ROBERTSON, JJ., concur.