**Joan SMITH, Plaintiff-Appellee,**

**v.**

**MICHIGAN BEVERAGE COMPANY, INC., Defendant-Appellee,**

**Allied Supermarkets, Inc., Defendant-Appellee,**

**Glenshaw Glass Company, Defendant-Appellant.**

**No. 72-2008.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1973.

Decided April 10, 1974.

---

David E. Rosenfeld, Terre Haute, Ind., for appellant.

Thomas H. Hicks, Warren R. Everett, Terre Haute, Ind., for appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.[1]

SWYGERT, Chief Judge.

Defendant Glenshaw Glass Company is appealing from a judgment entered on a jury verdict in favor of plaintiff Joan Smith for $100,000, for injuries she received when a bottle exploded. We reverse.

Glenshaw is a manufacturer of glass bottles. It manufactured and sold to Michigan Beverage the 28-ounce non-returnable bottle that is involved in the case. Michigan Beverage filed the bottle with a carbonated root beer beverage and then sold it to Allied Supermarkets. This bottle of root beer, along with two others, was purchased by Smith in the week before the accident. She took the bottles home and placed two of them on the floor in a space between the side of the refrigerator and a wall. Behind the bottles there was a gas pipe running parallel to the back wall and near the back baseboard. One of the bottles was taken from this storage place and used without incident. When Smith reached down and picked up the other bottle, it broke and she was injured by the broken glass.

---

1. The Honorable Clifford O'Sullivan of the Sixth Circuit is sitting by designation.

She then filed this diversity action against Allied, Michigan Beverage, and Glenshaw. Her amended complaint contained four counts. Counts III and IV were based on *res ipsa loquitur* and were dismissed on Smith's own motion at the start of trial. Count I was based on negligence and contained two allegations of negligence by Glenshaw: (1) failure "to inspect the bottle for flaws and weaknesses before delivery to Michigan Beverage Company;" and (2) failure "to maintain quality control of the bottles in order that such bottles would be safe for intended use." Count II alleged breach of implied warranties of merchantibility and fitness for intended use.

At trial, Smith testified that just as she picked up the bottle it exploded. On cross-examination she admitted she did not know whether she hit the gas pipe with the bottle, but admitted that it was possible that she had. However, she testified that if she had hit the pipe, it was not even hard enough that she was aware of it.

Dr. Andrew Dingle, a consulting scientist was called by Smith as an expert witness on glass fracture. He testified that the bottle broke when it received an external force, but that there was no way to determine the amount of external force necessary to cause the failure. On cross-examination he admitted that there was nothing unusual about this bottle and that at the time it left the Glenshaw plant it had no mechanical or material defects. But, he did state that although this bottle had no physical defect, it had what he termed a "philosophical" defect since "it failed during normal use." He testified that in his opinion this bottle was not reasonably fit for use in a house where it is expected to receive several bumps or bruises, "[b]ecause it failed; it broke."

Evidence was also introduced by the plaintiff concerning the amount and purpose of testing done by Glenshaw. The only evidence offered by Glenshaw was a report by a Dr. Fryer which indicated that "the glass walls were free of bubbles, stones, or any other blemishes that would render the bottle unfit for use in the trade."

At the close of the evidence the district court granted Allied Market's motion for a directed verdict and denied such motions on behalf of Michigan Beverage and Glenshaw. The case was submitted to the jury on the negligence theory only.[2] The jury found Glenshaw liable and exonerated Michigan Beverage. After appropriate post-trial motions were denied, this appeal followed.

Glenshaw argues that the district court erred by not granting its motions for a directed verdict or judgment notwithstanding the verdict and by refusing to give some of its tendered jury instructions. Since we agree with Glenshaw's first contention, we do not reach the question of the instructions.

The question in this appeal is whether sufficient evidence was introduced to prove that this bottle was defective and that this defect was the proximate cause of plaintiff's injuries. We must determine if the evidence "considered in its aspect most favorable to the plaintiff" exhibits "a total failure to prove any necessary element of the cause." Rice v. Ringsby Truck Lines, 324 F.2d 146, 148 (7th Cir. 1963).

I

We begin by examining the evidence supporting the allegation that the proximate cause of this accident was Glenshaw's negligent failure "to inspect the bottle for flaws and weaknesses before delivery to Michigan." In fact, there is no evidence supporting this contention. The plaintiff's own expert testified that this bottle had no material or mechanical defect. He stated that as far as he could tell it was "a reasonably, normal commercial bottle of its type." Indeed, even the trial court felt that a defect had not been proven: "There was really

2. Smith has not appealed from the refusal to tender instructions on the implied warranties theory.

no defect under the evidence, or at least no shown defect, as in those bottles, or in the bottle that came from the factory of Glenshaw Glass Company."

██ Smith argues that it was permissible to allow the jury to presume that the bottle had a defect since it broke under these particular circumstances. We find no support for such a proposition in Indiana law, the applicable law in this diversity action. Just as it is the "general rule that the mere fact of injury will not create an inference of negligence,"[3] the mere fact of the accident cannot create an inference of a defect in a products case.[4] The plaintiff is, in effect, asking this court to adopt a modified version of the res ipsa loquitur doctrine. As counsel for Smith has conceded, the Indiana doctrine of res ipsa loquitur is not applicable under the circumstances of this case.[5] We decline to adopt a position that will allow the plaintiff to rely on a similar type of presumption in regard to the defect question. There is no difference in policy between allowing a general presumption of negligence, as in the usual res ipsa situation, and a more limited presumption of a defect. The general rule is that the plaintiff must prove the defendant's negligence. The res ipsa loquitur doctrine is an exception to this rule in certain cases where the injuring element was in the exclusive control of the defendant. It is based on the theory that the plaintiff cannot prove the defendant's negligence, because only the defendant actually knows what happened:

> The doctrine of res ipsa loquitur is based to a large extent upon the ground that the evidence or facts concerning the operation of the injuring

agency are within the special knowledge and control of the defendant and the injured party does not have free access to such information.[6]

In this case, the bottle was under the exclusive control of the plaintiff and she knows what happened better than the defendant. Moreover, she had the broken pieces of the bottle and had her own expert examine them to determine the cause of the breakage. Hence, there is no justification for switching the burden of proof in this case.

██ Since there was no evidence of any flaws or weaknesses that caused the accident, and since none can be presumed, Glenshaw's failure to inspect, even if it could be deemed negligent, could not be the proximate cause of this injury, because there is no foundation for assuming that such an inspection would have discovered a defect and averted the accident. Mere proof of a failure to inspect is not enough:

> . . . A failure to make an inspection does not create liability unless the inspection, if made, would have disclosed the particular defect which makes the use harmful to the other.[7]

Obviously there could be no proof that a harmful defect would have been discovered when it was not even shown that there was a defect. This theory of liability should not have been submitted to the jury.

## II

We move next to Smith's other negligence theory: failure "to maintain quality control of the bottles in order that such bottles would be safe for intended use." By use of the term "quality control," it would seem that under this por-

3. Baker v. Coca-Cola Bottling Works of Gary, 132 Ind.App. 390, 177 N.E.2d 759, 762 (1961). See Ruffin v. Coca-Cola Bottling Co., 311 Mass. 514, 42 N.E.2d 259 (1942).

4. "The mere fact that an accident happened is not proof of a defective condition alleged in the complaint." Hook v. National Brick Co., 150 F.2d 184, 187 (7th Cir. 1945).

5. Evansville American Legion Home Ass'n v. White, 239 Ind. 138, 154 N.E.2d 109 (1958);

N.Y., Chicago & St. Louis R. Co. v. Henderson, 237 Ind. 456, 146 N.E.2d 531 (1957).

6. Evansville American Legion Home Ass'n v. White, 239 Ind. 138, 154 N.E.2d 109, 111 (1958).

7. Restatement (Second) of Torts § 300, comment C at 77 (1965). Accord, Hook v. National Brick Co., 150 F.2d 184 (7th Cir. 1945).

tion of the negligence count it is against assumed that this particular bottle was not safe for its intended uses. The contention would be that Glenshaw was under a duty to ensure that all its bottles were of a uniform quality, that Glenshaw breached this duty and allowed an unsafe bottle to reach the plaintiff, and that this breach was the proximate cause of the plaintiff's injuries. However, the only "evidence" that this bottle was not safe for its intended use was Dr. Dingle's assertion that it could not have been since "it broke." This was not a supported expert opinion, but rather a statement of the conclusion that the plaintiff wanted the jury to reach. As indicated above, there was no objective evidence of an unsafe condition peculiar to this particular bottle and there is no basis for such a presumption. It would be improper to give a jury an opportunity to reach such a conclusion.

There is the possibility, though, that this second allegation of negligence can be read more broadly. Failure to maintain quality control could be understood to mean that the general quality of all of Glenshaw's 28-ounce non-returnable bottles is so inferior that they are unsafe for their intended use. This would be an attack on the design of these bottles. Glenshaw's negligence would be based on its distribution of bottles that are not capable of resisting the type of bangs and knocks it could reasonably be foreseen they would receive in normal household use. The thread of this argument runs throughout the plaintiff's brief. However, the evidence to support such an allegation was not introduced. Dr. Dingle's conclusionary statement

would not be enough. There was no evidence offered concerning the thickness of the glass used in these bottles.[8] There was no expert testimony or evidence to prove what degree of external force a Glenshaw bottle could withstand without breaking. Nor was there any evidence or demonstration concerning the degree of force of an average household knock.

■ Thus, this broader theory must also fail for lack of evidence unless Smith was entitled to some type of presumption. It appears that she is arguing that, since Glenshaw was in the best position to test the strength of its bottles but it failed to do so, the jury should have been allowed, on the basis of the accident alone, to presume that Glenshaw negligently designed and manufactured bottles that are unable to withstand a reasonable external force. The burden of proof would then be on Glenshaw to show that its bottles can withstand a reasonably expected external force. No instruction concerning such a presumption was given, nor do we believe that one should have been. The relevant consideration is not whether Smith, herself, was able to determine the strength of such bottles before one broke. Rather the question is whether at the time of trial it would be impossible for Smith to introduce evidence concerning the strength of these bottles. There was no such impossibility and no need for such a presumption.

The judgment of the district court is reversed and this cause is remanded with directions that judgment notwithstanding the verdict be entered in favor of defendant Glenshaw Glass Company.

---

8. Admittedly, there was testimony from a non-expert, the vice-president of Michigan Beverage, that these non-returnable bottles were lighter than returnable bottles and that, therefore, they must be made of thinner glass.