**Woody BRUTHER and Peggy Bruther, Plaintiffs,**

**Envirex, Inc. and Crawford & Company, Intervening Plaintiffs,**

**v.**

**GENERAL ELECTRIC COMPANY, Defendant.**

**No. NA 91–29–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 19, 1993.

G. Edward James, Berry & Floyd, Carroll-ton, KY, for plaintiffs.

David W. Crumbo, J. Lee Murray, Brown, Todd & Heyburn, and Jeffrey L. Hansford, Boehl Stopher Graves & Deindoerfer, New Albany, IN, for defendant.

## ENTRY

BARKER, District Judge.

Woody Bruther ("Plaintiff") and Peggy Bruther (collectively "Plaintiffs") have filed suit against the General Electric Company ("Defendant") for injuries that Plaintiff sustained from a malfunctioning light bulb that Defendant allegedly manufactured improperly. Defendant moves the Court to enter summary judgment in its favor for two reasons: (1) Plaintiff cannot authenticate the light bulb in question, and (2) Plaintiff cannot establish that the bulb was defective. Defendant also has filed a motion pursuant to Fed.R.Civ.P. 42(b) to conduct separate trials on the issues of liability and damages. Intervening Plaintiffs, Envirex and Crawford & Company, ask the Court to strike certain defenses that Defendant has incorporated in its Answer to the Intervening Complaint and its Answer to Plaintiff's original Complaint. For reasons that will be explained below, the Court denies Defendant's motion for summary judgment. The Defendant's motion to bifurcate the trial is granted. Intervening Plaintiff's motion to strike is granted in part and denied in part.

## BACKGROUND

On January 31, 1989, Plaintiff was electrocuted while changing a light bulb at his place of employment, Rexnord, Inc., in Madison, Indiana. Rexnord is now known as Envirex, Inc. According to Plaintiff, when he attempted to unscrew the bulb from its socket, the glass envelope separated from the base, exposing his right hand to an electrical current. As a result of the ensuing shock, Plaintiff apparently sustained permanent, disabling injuries; he now seeks recovery from Defendant under the full gamut of theories available in a product liability action: strict liability, negligence, breach of warranty, and failure to warn. Mrs. Bruther also seeks compensation from the Defendant for the loss of "support, services, society, love and affection and comfort of her husband ..." Complaint, at 5.

Defendant has moved for summary judgment on two grounds: (1) Plaintiff cannot authenticate the bulb that he wishes to introduce into evidence, and (2) even if the bulb parts can be authenticated, Plaintiff cannot establish any evidence of a defect in the light bulb. Plaintiff disputes both arguments.

## DISCUSSION

### A. *Defendant's Motion for Summary Judgment*

#### 1. *Summary Judgment Standards*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict

in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that an issue of fact exists is insufficient to raise a factual issue. *See Shacket v. Philko Aviation, Inc.,* 681 F.2d 506, 513 n. 8 (7th Cir.1982), *rev'd on other grounds,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf,* 870 F.2d at 1330.

### 2. *Authentication of the Light Bulb*

■■■■ Under Federal Rule of Evidence 901(a): "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." F.R.E. 901(a). The rationale behind this Rule is that absent a showing that the evidence is what the proponent alleges, it has no relevance.

Defendant believes that Plaintiff is unable to authenticate the bulb that he seeks to introduce into evidence because of the lack of identifying marks on the bulb, and the existence of a gap in the chain of custody which developed immediately after the accident occurred. Apparently, no one at Rexnord took care to safeguard the bulb after Plaintiff was injured. While Howard Goodin, an employee at Rexnord, later removed the bulb from the socket, *see* Goodin Deposition at 50, it is unclear what became of the bulb after that time. It was only after Mr. James, Plaintiff's counsel, asked to examine the bulb that Don Riley, the plant safety manager, began to look for it. (The exact dates of these events is unknown). Mr. Riley found a broken bulb in a small cabinet next to the site where the accident occurred. Although he cannot positively identify the bulb as the one that was involved in the accident, Mr. Riley believes, with some reservations,[1] that it is the bulb in question because "[w]e wouldn't keep broken bulbs; so if it was there, it had a specific purpose to be there." Riley Deposition, at 23. In addition, the record indicates that only six people had access to the area where the accident occurred and the cabinet where the bulb was found. *See* Deposition of Louis Shields, at 27–28. As concerns the brand of the bulb, Plaintiff states in his affidavit:

> 4. That approximately two weeks before this incident where he was shocked, affiant had replaced these light bulbs in the same panel on which he was working when the bulb came apart on January 31, 1989. At that time, he had placed General Electric bulbs in the same two sockets that he was changing on January 31, 1989;
>
> 5. That to the best of his knowledge and belief, there have been no other brands of light bulbs ever used in that fault indicator panel other than General Electric bulbs, and he knows of no other brands of bulbs that have been stored in the area or used in that particular fault indicator panel since being employed by Rexnord (now Envirex);

Affidavit of Woodie Bruther, ¶¶ 4, 5.

The Court finds that the evidence in the record is "sufficient" within the meaning of F.R.E. 901 to support a finding that the bulb in question is the bulb that caused Plaintiff's injuries, and that the bulb was manufactured by Defendant. Of course this holding is limited only to the issue whether Plaintiff has met the threshold burden of producing enough evidence to support his allegations; the determination whether the bulb in fact is what the Plaintiff claims it is must be made by the jury when it acts in its appointed role as finder of fact. Given, however, the limited access to the area where the injury occurred and where the bulb in question was found, the proximity of the cabinet where the bulb

---

1. Mr. Riley expressed doubts about the authenticity of the bulb in two separate writings. *See* Defendant's Exhibits E & F.

was found to the site of the accident, Mr. Riley's statement that Rexnord would not keep a broken bulb unless there was a reason to do so, and Plaintiff's own statement that he had installed, just two weeks prior to the accident, a G.E. light bulb in the same socket where the bulb that caused Plaintiff's injuries was located, a jury considering these factors reasonably could conclude that the bulb in question is the bulb that came apart and caused Plaintiff injury.

The Defendant's arguments to the contrary are unpersuasive.[2] Besides a frontal assault on the sufficiency of Plaintiff's evidence (*i.e.* that no one can directly identify the bulb), Defendant makes much ado about lapses in the chain of custody, and tries to persuade the Court that because the bulb in question is nondescript, akin to a blood sample, "the chain of custody requirement must be followed to the letter …" to satisfy F.R.E. 901. *See Supplemental Memorandum in Support of Motion for Summary Judgment,* at 16. That rule requires nothing of the sort. Rule 901 regulates the admissibility of evidence. The slightest research on the law is this circuit concerning the effect of gaps in the chain of custody reveals that "any discrepancies in the chain of custody go to the weight of the evidence, not its admissibility." *See U.S. v. L'Allier,* 838 F.2d 234, 242 (7th Cir.1988), *citing, United States v. Shackleford,* 738 F.2d 776, 785 (7th Cir.1984).

Consequently, it is the jury, and not the Court, which must evaluate the significance of Plaintiff's inability to account for the bulb following the accident.[3]

### 3. Whether There Was A Defect in the Bulb

Under Indiana law, to prevail on a products liability claim a plaintiff must show: "(1) that he was injured by the product, (2) because it was defective and unreasonably dangerous, (3) that the defect existed at the time the product left the hands of the defendant, and (4) the product was expected to and did reach the consumer without substantial change in its condition." *Craven v. Niagara Machine and Tool Works, Inc.,* 417 N.E.2d 1165, 1169 (Ind.App. 4 Dist.1981). The mere fact that an accident occurred cannot create an inference of a defect in a products liability case. *See Smith v. Michigan Beverage Co., Inc.,* 495 F.2d 754, 757 (7th Cir.1974).

Defendant insists that Plaintiff has failed to establish that there was a defect in the bulb or that the Defendant breached a duty to him. Specifically, Defendant argues that summary judgment should enter in its favor because Plaintiff is unable to describe any information or evidence which supports his allegations, *see* Supplemental Memorandum, at 19, and because he has not produced ex-

---

2. The Court expresses its displeasure at the inartful presentation of Defendant's case: several citations in Defendant's brief are inaccurate (*see, e.g., Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277 (Ind.1983), Supplemental Brief, at 17), and Defendant's explanation of one case is imprecise, if not outright deceptive. Defendant states: "In *Fruehauf,* [174 Ind.App. 1, 366 N.E.2d 21 (Ind.App. 3 Dist.1977)] for example, the issue is not whether the tire found on the car two years after the accident was actually the tire involved in the accident. *That the tire on the car in Fruehauf was involved in the accident is a foregone conclusion.*" *General Electric's Reply to Bruther's Answer Brief to Defendant's Motion for Summary Judgment,* at 6 (emphasis added). Given this language, the clear implication of Defendant's argument is that there was no issue in the *Fruehauf* case concerning whether the tire that was being offered into evidence was the same tire that was involved in the accident. Therefore, the Court was shocked to find the following language in the *Fruehauf* decision:

> Fruehauf Corporation contends that there was not sufficient evidence of probative value to

establish that the tire, tube and flap offered into evidence at trial were the same tire, tube and flap purchased by Mr. Thornton in South Bend, Indiana on June 16, 1969, or that the tire, tube and flap offered into evidence at trial were the same tire, tube and flap that were on the right front steering axle of the truck driven by Mr. Thornton on August 7, 1969, the date of the accident.

*Fruehauf,* 366 N.E.2d at 31. Defendant's representations to this Court concerning the issues in the *Fruehauf* decision are false. The Court reads the briefs submitted to it very carefully; it also reads the cases that the briefs cite. Given the severe demands on the Court's most precious resource, its time, it hardly can afford to cope with the additional burden of sloppy lawyering. Defendant stands warned: tread lightly for you have exhausted the Court's patience.

3. This of course is predicated on the Court's earlier finding that the record contains evidence which is sufficient to warrant sending the matter to the jury in the first instance.

perts who will testify on his behalf. *See* Second Supplemental Memorandum, at ·5.

The ·Court can find no requirement that Plaintiff produce an expert to bolster his allegations. The nature of the alleged defect is not especially complicated. In response to one of the Defendant's interrogatories, Plaintiff gave the following explanation concerning what was wrong with the bulb:

> I was screwing out a bulb and had it ¾ of the way out when the bulb came apart. *The glass part came apart from the metal base (or the part of the bulb that screws in or out of the socket).* The glass part of the bulb slid out and the 277 volts pulled my finger in on element [sic] and I had my left hand holding on to a metal hand rail when it happened. It shocked me and I started jerking trying to get loose.

*Answer of Plaintiff Woodie Bruther to Defendant's Interrogatory No. 6* (emphasis added).

Defendant's belief that Plaintiff is unable to describe any information or evidence which supports his allegations totally discounts the testimonial evidence already in the record. For example, Mr. Goodin, who removed the ·bulb from the socket after the accident occurred, corroborated Plaintiff's version of the facts when he described what the bulb looked like (*i.e.* "the base was separated"). *See* Goodin Deposition at 21. The Defendant's preoccupation with the real evidence in this case (*i.e.* the infamous "bulb") is perplexing. Defendant seems to believe that unless Plaintiff can produce the offending bulb, no genuine issues of material fact remain for him to litigate. The Court must ask though, what if the bulb had blown up in an explosion that was so intense that nothing remained of it afterwards? Would Plaintiff, as a matter of law, be prevented from bringing suit because he couldn't produce the bulb? The answer is no. Plaintiff testified that he placed GE bulbs in the panel not more than two weeks before the accident. He also testified about ,what the bulb did when he tried to unscrew it, and has at least one witnesses who will testify on his behalf concerning this matter. What to make of these alleged facts is a duty for the jury in this case. The evidence presented, though scant, is sufficient to create a triable issue of fact. Defendant has not met its burden of demonstrating that there is an absence of evidence to support Plaintiff's case, *Celotex* 477 U.S. at 325, 106 S.Ct. at 2554, and its motion for summary judgment consequently must be denied.

### B. *Defendant's Motion to Bifurcate the Trial*

The Defendant also moves the Court to bifurcate the trial on the issues of liability and damages. Federal Rule of Civil Procedure 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ..." In the interests of judicial economy, the Court grants Defendant's motion.

### C. *Envirex and Crawford & Company's Motion to Strike*

Intervening Plaintiffs Envirex and Crawford & Company, the Worker's Compensation carrier for Envirex, ("Intervening Plaintiffs") move the Court, pursuant to Fed. R.Civ.P. 12(f), to strike the Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Defenses that Defendant included in its Answer to the Intervening Complaint, in addition to a portion of the Sixteenth Defense. Because Defendant incorporated its Answer to Plaintiff's Complaint in its Answer to the Intervening Complaint, they also move the Court to strike the Seventh Defense and a portion of the Twelfth Defense in Plaintiff's Complaint. In support of their motion, Intervening Plaintiffs argue that by relying on the defenses in question, Defendant is attempting to apportion fault to Envirex and "Envirex is not an entity to which fault can be apportioned in regards to the Bruthers' cause of action against G.E." *Plaintiff's Memorandum in Support of Motion to Strike*, at 4. Intervening Plaintiffs base their argument on the Comparative Fault Act, Ind.Code §§ 34–4–33–1 to 14. Under Ind.Code § 34–4–33–5(a)(1), fault can be assessed against a claimant, defendant or nonparty. The Act's definition of a "nonparty" explicitly excludes the claimant's employer. *See* Ind.Code § 34–4–33–2.

■ The issue that Intervening Plaintiffs raise has already been settled by more than

one Indiana Court. Plaintiff relies in part on a theory of negligence to recover the damages that he alleges are due to him. As Judge Tinder explained in *Moore v. General Motors Corp., Delco Remy Div.*, 684 F.Supp. 220 (S.D.Ind.1988): "the defendants are entitled to introduce evidence to contest the elements of a negligence claim, even if that evidence is evidence of causation attributable to a party or parties which do not qualify as nonparties under the terms of Act." *Id.* at 221. Also, in *Evans v. Schenk Cattle Co., Inc.*, 558 N.E.2d 892 (Ind.App. 1 Dist.1990), the Indiana Appellate Court held:

> It would be ... incorrect to instruct the jury that it cannot consider the employer to be at fault. The jury may consider the evidence presented and determine for itself whether the defendant has refuted the plaintiff's claim of negligence ... The reduction of an award based on the employer's conduct amounts to an allocation of fault to that employer. This is prohibited by Indiana's Comparative Fault Law because a claimant's employer cannot be considered a nonparty.

*Id.* at 895. Thus, the employer's fault may be considered in refuting the claim of negligence but may not be used to reduce Plaintiff's damages award. The Court consequently must strike any of Defendant's defenses which imply that Plaintiff's damages must be apportioned according to the fault of Envirex. Having examined the defenses in question, the Court strikes the Fourth and Ninth Defenses included in Defendant's Answer to the Intervening Complaint, and that part of the Sixteenth Defense which states: "That any amount awarded to the Bruther, Envirex and/or Crawford & Co. as compensatory remuneration for damage or injury be diminished proportionate to the contributory fault chargeable to Bruther or to others;". The Court also strikes that portion of the Twelfth Defense included in Defendant's Answer to Plaintiff's Complaint which states: "That any amount awarded to the Bruthers as compensatory remuneration for damage or injury be diminished proportionate to the contributory fault chargeable to Bruther or to others;".

## CONCLUSION

Because there remain genuine issues of material fact in this case, Defendant's motion for summary judgment is DENIED, and the Defendant's motion to bifurcate the trial on the issues of liability and damages is GRANTED. Intervening Plaintiff's motion to strike is GRANTED in part and DENIED in part.

It is so ORDERED.

## PARTIAL JUDGMENT

In accord with the Court's Entry in the above named action, the Defendant's motion for summary judgment is denied, and the Defendant's motion to bifurcate the trial on the issues of liability and damages is granted. Intervening Plaintiff's motion to strike the Fourth and Ninth Defenses and part of the Sixteenth Defense, included in Defendant's Answer to the Intervening Complaint, is granted. Intervening Plaintiff's motion to strike a portion of the Twelfth Defense included in Defendant's Answer to Plaintiff's Complaint also is granted. Intervening Plaintiff's motion to strike the Sixth, Seventh, Eighth, and Tenth Defenses included in Defendant's Answer to the Intervening Complaint is denied.

It is so ORDERED.