John W. WHITTED, Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION, and New United Motor Manufacturing, Inc., Defendants–Appellees.

No. 94–3354.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1995.

Decided June 29, 1995.

**1202**

John T. Roach, III (argued), Hansford C. Mann, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, IN, for plaintiff-appellant.

Lloyd H. Milliken, Jr. (argued), John K. McDavid, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for defendants-appellees.

Before POSNER, Chief Judge, RIPPLE, Circuit Judge, and NORGLE, District Judge.*

NORGLE, District Judge.

John Whitted crashed his 1987 Chevrolet Nova into two trees on January 12, 1993. Whitted sued the manufacturer and seller, New United Motor Manufacturing, Inc., and General Motors Corporation (collectively "Defendants"), in an Indiana state court to recover for his injuries. Defendants removed the matter to the United States District Court for the Southern District of Indiana calling upon that court's diversity jurisdiction. The district court granted Defendants' motion for summary judgment, dismissing the matter. That decision gave rise to this appeal.

### I.

John Whitted is a television repairman by trade and, on the date of the accident, he was six feet tall and weighed approximately 265 pounds, his girth is undisclosed. At the time of the collision, the ground was covered with snow, but there was no precipitation. In addition, the road was slick because, as the district court explained, the temperature had risen above freezing during the day but had fallen below freezing in the evening.

On January 12, 1993, Whitted was driving home from work with his seat belt, a single device which included both a shoulder harness and lap belt, securely fastened as he had done so daily for six years. As he negotiated an S-curve, Whitted realized that the wheels of a fast approaching oncoming car were slightly in his lane. The district court found that Whitted was travelling at least 25 m.p.h. as he negotiated the S-curve. To avoid a collision, he moved the 1987 Nova closer to the shoulder on his side of the road. Whitted moved too far and slid off the road and hit two trees. The Nova's speed at the point of impact is not known, nor is the distance travelled from the road over the snow-covered ground to the two trees. The collision thrust Whitted against the steering wheel, which broke, and the windshield, which shattered. Whitted remained within the Nova during the impact. At some point during the accident, the webbing of the seat belt separated while the female clasp (latch plate) remained fastened in the buckle. Whitted sustained fractures to two bones in his lower left arm and cuts to his forehead.

Whitted argued before the district court that the seat belt was defective in violation of Indiana's Strict Product Liability Act.[1] First, Whitted asserted that the seat belt was defective in that it failed to restrain him. Second, he asserted that Defendants did not warn him the Nova seat belt might break in collisions at a legal speed for persons of his weight or heavier. The district court was not persuaded.

In the process of granting summary judgment for Defendants, the district court struck an affidavit from its consideration and

---

* The Honorable Charles R. Norgle, Sr., United States District Judge for the Northern District of Illinois, sitting by designation.

1. The Indiana Supreme Court refers to the act as the "Strict Product Liability Act" because the act only applies to product actions based on strict liability in tort and not actions based on negligence. *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1071 n. 1 (Ind.1993).

denied admission of the contents of the Nova Owner's Manual into evidence. Considering only the properly submitted materials, the district court held that Whitted did not raise a material issue of fact. In this appeal, Whitted challenges the propriety of the district court's conclusions.

## II.

### A. Affidavit And Owner's Manual

Whitted questions the district court's decision to strike his counsel's affidavit ("Mann Affidavit"). Whitted intended to use the Mann Affidavit to create a genuine issue as to a defect in the seat belt. The Mann Affidavit relayed facts concerning informal discovery, but it also declared that both the Nova seat belt and the Nova Owner's Manual lacked an appropriate warning. Attached to the affidavit was a copy of the 1987 Chevrolet Nova Owner's Manual. Commenting on the owner's manual, the Mann Affidavit states the following:

> The 1987 Chevrolet Nova Owner's manual furnished by General Motors with instructions to keep it with the vehicle at all times ... does not warn that the seat belt may break in an accident, or that the danger of it breaking is dependent upon the weight of the user of the seat belt....

(Mann Aff. ¶ 3.)

The district court granted Defendants' motion to strike the Mann Affidavit, along with the manual, reasoning that Rule 3.7 of Indiana's Rules of Professional Conduct prohibits an attorney from acting as both an advocate and a witness. In a footnote, the district court explained its reasoning for striking the Mann Affidavit and denying admission of the attached portions of Nova's owner's manual:

> Plaintiff also filed an Affidavit by his counsel. Defendants filed a Motion to Strike both affidavits. Plaintiff's counsel's Affidavit must be, and hereby is, STRICKEN because under Indiana Rule of Professional Conduct 3.7, an attorney should not act both as a witness and an advocate in the same proceeding....

*Whitted v. General Motors,* No. TH 93–76–C, slip op. at 6 n. 1 (S.D.Ind. Aug. 29, 1994) (emphasis in original).

On appeal, Whitted argues that his counsel's affidavit should have been accepted into evidence. He reasons that the affidavit merely contains basic facts to which an attorney should be allowed to testify; that the Federal Rules of Civil Procedure favor informal discovery necessitating attorney affidavits; that an attorney's affidavit should be measured by the same criteria as any other affidavit; and that Indiana's Rules of Professional Conduct, which underlay the district court's decision, allow for affidavits which speak to uncontested facts.

■ We review the decision to grant or deny a motion to strike under an abuse of discretion standard. *Cleveland v. Porca Co.,* 38 F.3d 289, 297 (7th Cir.1994). Decisions that are reasonable, i.e., not arbitrary, will not be questioned under this standard. Because this is a diversity case, federal evidence law applies. *Jackson v. Bunge Corp.,* 40 F.3d 239, 245 (7th Cir.1994); *see* Fed. R.Evid. 1101(b). The district court's ruling here was not an abuse of discretion.

We note, first, that Whitted's counsel was prohibited from submitting an expert's affidavit due to the order of April 29, 1994. In the plan for managing the case, filed August 3, 1993, Whitted agreed to disclose all applicable witnesses, including expert witnesses by February 1, 1994. (Case Management Plan at 2.) Whitted failed to disclose experts. As a result, two months after the February 1994 deadline, the magistrate barred Whitted from presenting expert testimony at trial. (Order of Apr. 29, 1994.)

■ Regarding the district court's ruling on the Mann affidavit, we recognize that Rule 3.7 of Indiana's Rules of Professional Conduct is not binding authority, but merely persuasive as Indiana's Rules of Professional Conduct have not been codified by Congress nor adopted by this circuit as federal evidence law. However, the district court's reliance on Indiana's Professional Code was not an abuse of discretion. Even though allegations of the affidavit pertaining to Defendants' examination of the seat belt are innoc-

**1204**

uous, it was within the district court's discretion whether to strike the affidavit, regardless of a policy favoring informal discovery.[2] Concerning the other allegations of the Mann Affidavit,[3] the district court's position disfavoring attorney testimony regarding factual matters, contested or uncontested, was sound. *See* Model Rules of Professional Responsibility DR 5–102; *United States v. Morris,* 714 F.2d 669, 671 (7th Cir.1983).

As to the owner's manual attached to the affidavit, Whitted argues that documents accompanying affidavits, submitted in opposition to a motion for summary judgment, should be admitted over objections that those documents are not sworn or certified. However, Whitted argued to the district court, and now contends on appeal, that the pertinent rule is Federal Rule of Evidence 902(7), which allows admission of the manual and that the district court's holding was in derogation of that Rule. The district court ruled that the manual was inadmissible, not because of any objections, but rather because "[t]he Court does not believe that the *contents* of the Owner's Manual are admissible under Fed.R.Evid. 902(7) because the *contents* of the manual constitute more than a 'Trade inscription' and are not, therefore, self-authenticating." *Whitted,* slip op. at 6 n. 1 (emphasis in original).

■ District courts, when ruling on a motion for summary judgment, may consider evidence beyond the pleadings. *Oriental Health Spa v. City of Fort Wayne,* 864 F.2d 486, 490 (7th Cir.1988). Yet, materials submitted for summary judgment must be otherwise admissible. Fed.R.Civ.P. 56(e). As the district court found, the Nova Owner's Manual would not be admissible in trial as self-authenticating. Federal Rule of Evidence 902(7) provides that trade inscriptions

affixed in the course of business, indicating ownership or control, need not be supported by extrinsic evidence to establish genuineness of commercial labels. The owner's manual is not a trade inscription and admitting the manual because it had a trade inscription on its cover does not comport with the rule. Therefore, Rule 902(7) does not apply here.[4] In any event, the district court did not abuse its discretion in denying consideration of the owner's manual. Lastly, we add that neither the Mann Affidavit nor the manual, had they been admitted, would have raised a material issue to warrant denial of Defendants' motion for summary judgment. Accordingly, the district court did not abuse its discretion in striking the Mann Affidavit and owner's manual.

### B. Indiana's Strict Product Liability Act

The central issue before this court is whether Whitted raised a genuine issue of material fact on his claim of strict liability. The district court held that he did not. We review that decision under a *de novo* standard.

■ Whitted's complaint is based solely on Indiana's Strict Product Liability Act, which is a codification of the Restatement (Second) of Torts § 402A. Ind.Code § 33–1–1.5–1 *et seq.* Indiana law imposes strict liability in tort on those who place into the stream of commerce products which are in a defective condition unreasonably dangerous to a consumer. *Reed,* 621 N.E.2d at 1072; *McGraw–Edison Co. v. Northeastern Rural Elec. Membership Corp.,* 647 N.E.2d 355, 359 (Ind.Ct.App.1995); *Cox v. American Aggregates Corp.,* 580 N.E.2d 679, 684 (Ind.Ct.App. 1991). The Act only applies to product liability actions based on strict liability and not negligence. *Reed,* 621 N.E.2d at 1071 n. 1.

---

**2.** "The use of affidavits by counsel is in certain carefully confined situations undoubtedly appropriate, but it is a tactic fraught with peril...." *Friedel v. City of Madison,* 832 F.2d 965 (7th Cir.1987).

**3.** The Mann Affidavit also contained testimony regarding the absence of warning labels both on the seat belt and within the Nova Owner's Manual; and the affidavit also alleged absence of warning within the contents of the Nova Owner's Manual as to "extenders."

**4.** Instead, Whitted could have circumvented the problem had he, for instance, procured a stipulation from Defendants. In addition, we make no comment on other, more tenable, theories of admissibility, e.g., Rule 801(d)(2)(A). The district court was asked to decide if the manual may be admitted under a particular rule, and the court ruled correctly.

Because the act replaces the common law, it must be strictly construed. "Strict product liability in tort was created to insure that the manufacturers of defective products will be required to shoulder the burden of damages caused by placing unreasonably dangerous products in the stream of commerce and to alleviate this burden from the user or consumer." *McGraw–Edison Co.*, 647 N.E.2d at 360. Indiana's version of product liability law consists of the following *prima facie* elements: (1) the defective product was unreasonably dangerous; (2) the defect existed at the time the product left the defendant's control; (3) the product was expected to, and did, reach the consumer without substantial alteration; and (4) the plaintiff's injuries proximately resulted from the defect in the product. *See Bruther v. General Elec. Co.*, 818 F.Supp. 1238, 1241 (S.D.Ind.1993); *Underly v. Advance Mach. Co.*, 605 N.E.2d 1186, 1189 (Ind.Ct.App.1993). There are three types of product defects: manufacturing, design, and warning. Ind.Code § 33–1–1.5–2.5; *Zepik v. Ceeco Pool & Supply, Inc.*, 118 F.R.D. 455, 462 (N.D.Ind.1987); *Jarrell v. Monsanto Co.*, 528 N.E.2d 1158, 1170 (Ind. Ct.App.1988) (concurring opinion). Whitted argues that the seat belt was defective in each of these three ways and that he has alleged the necessary elements.

### C. Crashworthiness

Whitted does not argue that the separated seat belt was in any way linked to the initial collision. He argues that his resulting injuries were enhanced by a failure of the seat belt. As such, the district court, applying Indiana law, suggested that this is a "crashworthiness" case, citing *Miller v. Todd*, 551 N.E.2d 1139 (Ind.1990) as authority. In *Miller*, the Indiana Supreme Court addressed whether a plaintiff may recover, under either negligence or strict liability, where the defect complained of was not the cause of the automobile accident, but rather the defect enhanced the injuries resulting from the initial collision. The court held that such a claim would lie in Indiana. *See id.* (citing *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968)); *see also Pries v. Honda Motor Co.*, 31 F.3d 543, 544 (7th Cir.1994).

The crashworthiness doctrine imposes upon the manufacturer liability for design defects which, although not causing the initial collision, compound the resulting injuries when, because of the defects, the driver or passenger strikes the car's interior or objects exterior to the car. *Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1154 (Ind.Ct. App.1990). The Eighth Circuit Court of Appeals, in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968), was the first circuit to recognize that the risk of collisions was reasonably foreseeable and that a car's design must reflect that risk. The majority of jurisdictions follow the *Larsen* rule. Those jurisdictions reason that, because car accidents are reasonably foreseeable, car makers have a duty within economic reason to ensure that their vehicles will protect occupants against injury following the initial collision. Given the reality that safety technology is expensive, the operative consideration in defining a crashworthiness defect is the balance between reasonable safety and economics. Manufacturers could create vehicles with the damage resistance of an army tank, or install roll bars and harnesses akin to race cars. *Cf. Dreisonstok v. Volkswagenwerk*, 489 F.2d 1066 (4th Cir.1974); *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979). However, the law does not require manufacturers to follow such economically suffocating measures. *See Hurt v. General Motors Corp.*, 553 F.2d 1181, 1184 (8th Cir.1977). Instead, the law only requires that car manufacturers design products to eliminate unreasonable risks of foreseeable injury. *Craigie v. General Motors Corp.*, 740 F.Supp. 353, 358 (E.D.Pa.1990).

In essence, the crashworthiness doctrine merely expands the proximate cause element of product liability to include enhanced injuries. *Miller*, 551 N.E.2d at 1142. "The plaintiff in a crashworthiness case has the burden of proving that the manufacturer breached its duty in a manner that proximately caused the plaintiff's injuries." *Id.* at 1141. If a defect is established, the crashworthiness doctrine expands the breadth of proximate cause allowing a plaintiff to recover for intensified or consequential injuries. Thus, under the crashworthiness doctrine, a defect is "not merely the conclusion that a

product failed and caused injury, but that the product failed to provide the consumer with reasonable protection under the circumstances surrounding a particular accident." *Id.* at 1143. In this matter, Whitted did not establish that a defect of any sort existed; furthermore, Whitted did not establish that the alleged defect proximately caused an injury.

### 1. Design

Manufacturers have a duty to design products that are free of flaws which cause injury in the product's use. Thus, a manufacturer will be liable for designing a product with a defective condition which is unreasonably dangerous. Indiana's definition of "defect" is similar to what is commonly referred to as the consumer expectation test: a product is in a defective condition if the condition is not contemplated by the reasonable consumer and the condition is unreasonably dangerous to the expected user. Ind.Code § 33–1–1.5–2.5. "The requirement that a product be in a defective condition focuses on the product itself; whereas, the requirement that the product be unreasonably dangerous focuses on the reasonable contemplations and expectations of the consumer." *Cox v. American Aggregates Corp.*, 580 N.E.2d 679, 685 (Ind. Ct.App.1991) (holding that, under Ind.Code § 33–1–1.5–3(a), both elements must exist to attach liability). We have said, concerning the legal definition of defect, "The question is not whether it is 'possible' for something untoward to occur during an accident but whether 'the design creates unreasonable danger' according to 'general negligence principles.'" *Pries v. Honda Motor Co.*, 31 F.3d 543, 545 (7th Cir.1994) (citing *Miller,* 551 N.E.2d at 1141). Essentially, the standard for defects has devolved into a negligence test.

 However, as Defendants suggest, to allow a plaintiff to establish the existence of a design defect by his mere assertion is ludicrous. *See generally Bishop v. Firestone Tire & Rubber Co.*, 814 F.2d 437 (7th Cir. 1987). In questioning the propriety of a product's design, we have said that the law requires more than mere assertion: "That a product failed in a particular accident does not necessarily show 'defect,' however." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir.1994). "Indiana requires the plaintiff to show that another design not only could have prevented the injury but also was cost-effective under general negligence principles." *Pries,* 31 F.3d at 546 (holding that without expert testimony plaintiff could not establish a defective design). The appropriate evidence for demonstrating that a particular seat belt design could have prevented an injury would be, for example, a study of failures for that design. *See Bammerlin,* 30 F.3d at 901. To allege that a manufacturer breached its duty to design a safe product under strict liability, a claimant must offer a safer, more practicable product design than the design in question. *Miller,* 551 N.E.2d at 1143. Accordingly, since Whitted failed to present evidence that the product was flawed in its design and he failed to illustrate that a better design was cost-effective, summary judgment was properly issued as to the claim of design defect.

### 2. Warnings

 Whitted also contends that Defendants violated Indiana's product liability law for failing to warn. For one to be liable for a failure to warn, the product in question must be unreasonably dangerous.[5] However, to establish danger, a plaintiff must present more evidence than that the product failed thereby causing injury. "'Unreasonably dangerous' refers to any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's char-

---

5. The American Law Institute has drafted a section focusing on products liability for a new Restatement of Torts. The subsection addressing defective warnings provides:

[A] product is defective due to inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced by the provision of reasonable instructions or warnings by the seller or a predecessor in the commercial chain of distribution and the omission of instructions or warnings renders the product not reasonably safe.

ALI Tentative Draft No. 1, § 2(c).

acteristics common to the community of consumers." Ind.Code § 33–1–1.5–2. The fact that a product caused or, as alleged here, enhanced injury does not *ipso facto* mean that the product is unreasonably dangerous. Rather, the product may have caused injury due to misuse of the product, or a manufacturing defect, or the age of the product— here six years old. Given the possibilities, a plaintiff must present evidence, *via* statistics or other means, to illustrate that under normal or expected use there is a possibility that a product may cause injury. *See Bammerlin,* 30 F.3d at 901. Here, Whitted failed to support his argument with evidence—statistical, expert, or otherwise—that the product contained a danger about which Defendants were aware, or should have been aware, and about which Defendants should have warned. Accordingly, since Whitted failed to demonstrate that the 1987 Nova seat belt was unreasonably dangerous, Defendants are not liable for omitting warnings.

### 3. Manufacturing

Whitted argues that the mere circumstances of the accident indicate a defect existed at the time the seat belt was manufactured. He contends that Indiana law permits application of the doctrine of *res ipsa loquitur* to strict liability cases. For authority, Whitted cites Dean Prosser's 1966 article, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn.L.Rev. 791 (1966), the concurring opinion in *Cornette v. Searjeant Metal Prods., Inc.,* 147 Ind.App. 46, 258 N.E.2d 652, 664 (1970), and *Bruther v. General Elec. Co.,* 818 F.Supp. 1238 (S.D.Ind. 1993). Whitted reasons that the circumstances surrounding the accident would lend a reasonable jury to infer that the seat belt was defective. The circumstances which he argues would lead a reasonable juror to infer that a defect existed at the time the product left the respective control of each Defendant include (a) a low speed head-on collision, (b) normal use since the purchase of the Nova, (c) his own affidavit that the 1987 seat belt was not dilapidated from use, and (d) a broken seat belt. In substance, Whitted argues that this accident suggests negligence which a reasonable juror would attribute to Defendants.

The doctrine of *res ipsa loquitur* is a rule of evidence which allows an inference to be drawn from a particular set of facts. The doctrine consists of two elements. First, the doctrine recognizes that under certain rare instances, common sense alone dictates that someone was negligent. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 39, at 244–45 (5th ed. 1984). Second, the doctrine requires that the injuring instrumentality be in the exclusive control of the defendant at the time of injury. *Id.; Newell v. Westinghouse Elec. Corp.,* 36 F.3d 576, 578 (7th Cir.1994). The aspect of control is critical to the theory; the second element recognizes that certain injuring instrumentalities are within the special knowledge and control of the defendant, and that the plaintiff does not have free access to these instrumentalities. The doctrine is one ground in negligence. *See Byrne v. Boadle,* 159 Eng.Rep. 299 (1863). "If a plaintiff presents sufficient evidence to bring himself within the operation of *res ipsa loquitur,* the inference of negligence is to be weighed by the trier of fact." *Newell,* 36 F.3d at 579.

Of the jurisdictions that allow theories analogous to *res ipsa loquitur* to prove that a manufacturing defect existed, four methods of proof have evolved. Using the doctrine, a plaintiff should employ one of the following to establish the existence of a manufacturing defect: (1) plaintiff may produce an expert to offer direct evidence of a specific manufacturing defect; (2) plaintiff may use an expert to circumstantially prove that a specific defect caused the product failure; (3) plaintiff may introduce direct evidence from an eyewitness of the malfunction, supported by expert testimony explaining the possible causes of the defective condition; and (4) plaintiff may introduce inferential evidence by negating other possible causes. *See Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1392 (10th Cir. 1987) ("The inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes of the accident."); *Jenkins v. Whittaker Corp.,* 785 F.2d 720, 733 (9th Cir.1986) (holding that nothing bars application of the *res ipsa loquitur* theory to strict liability in Hawaii); *Jagmin v. Simonds Abrasive Co.,* 61 Wis.2d

60, 211 N.W.2d 810, 814 (1973) (describing the four methods of proof). Again, however, the mere fact that an accident occurred in not enough. *Bruther*, 818 F.Supp. at 1241. Whitted failed to establish any of the above.

This court addressed the question of whether it would be proper to apply a type of *res ipsa loquitur* rationale to an Indiana product liability case in *Smith v. Michigan Beverage Co.*, 495 F.2d 754, 757 (7th Cir. 1974). In that case a bottle exploded and injured the plaintiff. The plaintiff suggested that the *res ipsa loquitur* doctrine could support the conclusion that a defect existed because the bottle had not been subjected to unusual circumstances. This court responded, "the Indiana doctrine of *res ipsa loquitur* is not applicable under the circumstances of this case. We decline to adopt a position that will allow the plaintiff to rely on a similar type of presumption in regard to the defect question." *Id.* at 757. The *Smith* court continued, "there was no objective evidence of an unsafe condition peculiar to this particular bottle and there is no basis for such a presumption. It would be improper to give a jury an opportunity to reach such a conclusion." *Id.* at 758. We did not, however, find that the doctrine may not be applied in all Indiana products cases.

However, although other jurisdictions have applied the evidentiary rule to strict products cases and we have not barred its use, we have recognized the theoretical inconsistences in fusing the two. Applying Illinois law, that concern was addressed in *Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 211 (7th Cir.1994). In that case, the plaintiff injured himself when a recently purchased glass peanut jar shattered under the plaintiff's normal pressure as he replaced the lid. *Id.* at 210. Chief Judge Posner wrote on behalf of the court and outlined how the doctrine should operate:

> The doctrine of res ipsa loquitur teaches that an accident that is unlikely to occur unless the defendant was negligent is itself circumstantial evidence that the defendant was negligent. *The doctrine is not strictly applicable to a products liability case because unlike an ordinary accident case the defendant in a products case has parted with possession and control of the harmful object before the accident occurs.* But the doctrine merely instantiates the broader principle, which is as applicable to a products case as to any other tort case, that an accident can itself be evidence of liability. If it is the kind of accident that would not have occurred but for a defect in the product, and if it is reasonably plain that the defect was not introduced after the product was sold, the accident is evidence that the product was defective when sold.

*Welge*, 17 F.3d at 211 (citations omitted) (emphasis added). The Chief Judge concisely articulated how *res ipsa loquitur* is theoretically incongruous with strict products liability. Again, *res ipsa loquitur* is a negligence doctrine which focuses on the defendant's care to assess liability, whereas strict products liability focuses on the product only. Furthermore, the second element of *res ipsa loquitur*, which is critical to the theory, requires that the defendant have control of the instrumentality, whereas the second element of strict products liability requires the product to have left the defendant's control. Without attempting to alloy the two concepts, we glean from the doctrine of *res ipsa loquitur* the principle that, in certain rare instances, circumstantial evidence may produce reasonable inferences upon which a jury may reasonably find that a defendant manufactured a product containing a defect.

Nevertheless, under the facts of this case, Whitted may not avail himself of the general application of circumstantial evidence. Whitted did not present enough evidence to establish that Defendants retained control or dominion over the seat belt—that is, that six years of invariable use did not disturb Defendants' influence or authority over the product. The evidence adduced on the issue of Defendants' control was that the seat belt appeared to be in good working condition prior to the collision, that the seat belt had never demonstrated problems before, and that the seat belt was not cut or frayed prior to the accident. This is simply not enough to create a reasonable inference. He did not nullify enough of the probable explanations of the seat belt break. Whitted did not negate, for instance, that the seat

belt acted properly or that the belt separated at a point in time which decreased his injuries.[6] In addition, the Court notes that Whitted did not establish the third element of his *prima facie* case: that the seat belt proximately enhanced his injuries (e.g., the force of his body against the belt might have caused more severe injuries than those he sustained had the belt not separated). We find that under the Indiana Strict Product Liability Act a plaintiff may use circumstantial evidence to establish that a manufacturing defect existed only when the plaintiff presents evidence by way of expert testimony, by way of negating other reasonably possible causes, or by way of some combination of the two.

In sum, Whitted failed to produce enough evidence to raise a material issue of fact that the 1987 Chevrolet Nova seat belt broke due to a defect of any sort. Accordingly, we affirm the district court's holding in full.

---

6. Although not argued by the parties, we are aware that 49 C.F.R. § 571.208, S4.1.1.3.1(c) suggests a speed at which seat belts should hold. However, the Code's 30 m.p.h. demarcation is a function of the overall testing conditions:

[The vehicle shall,] When it perpendicularly impacts a fixed collision barrier, while moving longitudinally forward at any speed up to and including 30 m.p.h. *under the test conditions of S8.1 with anthropomorphic test devices* at each front outboard position restrained by Type 2 seatbelt assemblies, experience no complete separation of any load-bearing element of a seatbelt assembly or anchorage.

Nat'l Highway Traffic Safety Admin., 49 C.F.R. § 571.208, S4.1.1.3.1(c) (1994) (emphasis added). It is clear that the speed limit is not to apply to all car accidents, it is not an absolute. For instance, the driver of a car might weigh more or less than the "test dummies," which have their own specific design requirements. In this case, the driver weighed approximately 265 pounds and was traveling at least 25 m.p.h. before he left the road. Given these conditions, it is reasonable to infer that the 1987 Nova seat belt acted as it should have.